UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE:<br>DAVID J. MAFFETT,<br>DEBTOR. | :<br>:<br>: | CASE NO. 23-52680-BEM<br>CHAPTER 7 |
| MICHAEL J. BARGAR, Chapter 7 Trustee<br>For the Estate of David J. Maffett,<br><br>PLAINTIFF<br>vs.<br>ROCKET MORTGAGE, LLC f/k/a QUICKEN LOANS, LLC,<br><br>DEFENDANT | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | ADV. PRO. NO. 23-05164-BEM |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, ROCKET MORTGAGE, LLC f/k/a QUICKEN LOANS, LLC ("Rocket Mortgage "or "Defendant"), by and through Rocket Mortgage's Attorneys of Record, files this *Reply Brief in Support of Defendant's Motion For Summary Judgment* and shows this Honorable Court as follows:

**INTRODUCTION**

All of the reasons why the Notary subscribes the Notary's name to a deed have been satisfied in the present case.

All of the following facts are undisputed (although the Trustee [mistakenly] argues that some of them, in the Trustee's opinion, are irrelevant):

The Borrower received the loan and in consideration for the loan granted a security interest to the Lender by virtue of a Deed to Secure Debt (the "Deed").

The unofficial witness' presence, attestation and subscription are not questioned.

The notary was present at the Borrower's execution of the Deed.

The notary signed as a subscribing witness who saw the Borrower execute the Deed using the "signed, sealed and delivered in the presence of" language that is standard on Georgia deeds.

There were two witness signatures clearly shown on the face of the Deed (one immediately above type marked "Unofficial Witness" and one immediately above type marked "Notary Public, State of Georgia").

The two subscribing witnesses subscribed their names to the Deed.

The signatures of both of the two subscribing witnesses are clearly evident on the Deed.

The Deed was recorded in the County Deed Records where the real property collateral is located.

The only cursive script on the Notary Commission is the Notary's signature.

The notary's signature on the Notary Commission in cursive script matches the notary's cursive script signature on the Deed.

Aside from the cursive script of the Notary's signature, the notary's name appears on the Notary Commission only in typewritten form.

The Notary's name appears in typewritten form on the Deed in the form of the Notary's seal which appears "only and exactly" as the Notary's name appears in typewritten form on the Notary's Commission.

## I. THE TRUSTEE'S POSITION, IF ADOPTED, WOULD BRING ABOUT A LEGAL CATASTROPHE.

To be clear, both Michael J. Bargar, the Chapter 7 Trustee (the" Trustee") and the Defendant agree that not recording a deed does not invalidate the deed. Both parties agree that the deed is still valid between the grantor and the grantee whether the deed is recorded or not.

***However***, every second that a deed is unrecorded, the owner is exposed to vast legal and financial disaster as the deed is subject to being superseded at any time by the claims of third parties (both real and hypothetical). "Every unrecorded voluntary deed or conveyance of land made by any person shall be void as against subsequent bona fide purchasers for value without notice of such voluntary deed or conveyance…." O.C.G.A. § 44-2-3.

Once a deed is recorded, the grantee of the deed is protected against third party claims. That protection, if left untouched by the Courts, lasts forever. "…provided, however, that, if the voluntary deed or conveyance is recorded in accordance with Code Section 44-2-1,[1] it shall have priority over subsequent deeds or conveyances to the described land." *Id.*

[1] "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed without notice of the existence of the prior deed." O.C.G.A. § 44-2-1.

The Trustee seeks to have this Court invalidate the recording, and, thus remove protection against third party claims for hundreds of thousands of deeds in Georgia. Literally, hundreds of thousands of recorded deeds would be retroactively declared to have not been recorded at all, including the deeds on the homes of many prominent Jurists, both currently on the bench and retired. In addition to placing the owner's vesting deed at risk, most mortgages have provisions in them that provide that any action or event that places the lender's interest in the property in jeopardy is a default. Accordingly, not only would a multitude of owners' vesting deeds become "unrecorded," their mortgages would be in default as well. In addition, scores upon scores of Closing Attorneys, including some of the most esteemed, respected and highly regarded Closing Attorneys in the State of Georgia, would be told that scores upon scores of deeds which they notarized and recorded (indeed possibly every deed that they notarized and recorded since 1986) are now "unrecorded." That is the very definition of a cataclysm.

The Trustee himself has very clearly stated that he recognizes the consequences of his request:

> "A recordation on an insufficient attestation is equivalent to no recordation at all and the recording of an improperly attested deed is a mere nullity." Trustee's Response Brief, Page 5, footnote 5.
>
> "Thus, recordation of an improperly attested deed to secure debt does not provide constructive notice of the contents or existence of the deed."" Trustee's Response Brief, Page 5, footnote 5.
>
> "Otherwise, the notarial act is a nullity, and the underlying security deed is a nullity as to a bona fide purchaser." Trustee's Response Brief, Page 6.

Accordingly, there is no debate about the Trustee's intentions. The Trustee intends to have this Court "unrecord" every single recorded deed in the State of Georgia where the Notary's signature is illegible.[2] That would be a catastrophe and would have catastrophic consequences.

## II. IF ONE HAS TO LOOK AT THE NOTARY'S COMMISSION IN ORDER TO DETERMINE WHETHER THE NOTARY HAS COMPLIED, THAT IS AN ALLEGATION OF A LATENT DEFECT.

Both parties completely agree as to the value of the *Leeds* case. *Leeds Bldg. Prods. v. Sears Mort. Corp.*, 267 GA. 300, 477 S.E.2d 565 (1996). "What the *Leeds* case held was that a bona fide purchaser could not prevail by going outside of a document that appears proper on its face and seek to challenge the recording by finding a latent defect." Trustee's Response Brief, Page 10.

Defendant agrees.

Where the parties disagree is that, in the present case, it is the Trustee who requires an examination of records *outside* of the Deed itself. The Trustee's position requires that a title examiner look to the Notary Commission (a document outside of the Deed Records) to determine whether a notary's name (signature to signature and type to type) is the same on the Deed as it is on the Notary's Commission. The fact that the Notary Commission holds the answer makes this a latent defect case (if it is a defect at all, which it is not) and according to *Leeds*, not a proper examination for this Court to require of title attorneys examining the Deed Records.

[2] Two questions raised by the Defendant that the Trustee does not even make any attempt to address is "illegible according to who?" and "how illegible does it have to be before it is 'illegible?'"

## III. <u>THE NOTARY'S NAME ON THE DEED IS EXACTLY AND ONLY AS IT APPEARS ON THE NOTARY COMMISSION.</u>

The Notary's name appears on the Notary Commission in two places. The Notary's name appears once in cursive script and once in block typewriting or print. The only one of the two formats capable of duplication by the Notary in pen and ink is the cursive script. Here, the Notary replicated the cursive script only and exactly as it appears on the Notary Commission.

Likewise, the Notary's name appears on the Deed in two places. The Notary's name appears once in cursive script and once in block typewriting or print. The Notary's name appears in cursive script exactly as it appears in cursive script on the Notary's Commission. The Notary's name appears in block type in the Notary Seal exactly as it appears on the Notary's Commission.

It would be absurd to attempt to require notaries to duplicate typewriting with their signature. The absurdity and bad faith of the Trustee's position is reflected in the Trustee's argument that the word "Gwinnett" is ***<u>signed</u>*** by the Trustee on the Deed, ***<u>but the Trustee's name is not signed.</u>*** "The Court (and anyone) can easily see that the notary in this case was able to 'sign' the word 'Gwinnett' in the signature line." Trustee's Response Brief, Page 3, ft 2. "He neglected (or forgot) to 'sign' the name 'Terry O. Yeom' in the signature line." Trustee's Response Brief, Page 3, ft. 2.

The Trustee's novel regime for notaries is not achievable as the "goalposts" would constantly shift. The Trustee argues that the name only appears where it is printed in block type and not where it is signed. However, even a completely legible signature where every single letter is completely legible is not "only and exactly" as the name appears on the commission in block type because the notary will sign in cursive script.

The Trustee's definition of "only and exactly" presumably would also mean that the notary must match the size and the font to be "only and exactly." A cursive signature, even though completely legible, would not meet this definition because it is not "only and exactly" the same size, style and font of the block type.

At a minimum, this makes the Notary Statute ambiguous as to the meaning of "only and exactly" as in "how exact?"

## IV. THE TRUSTEE'S NOVEL REGIME HAS A MULTITUDE OF PROBLEMS, NONE OF WHICH THE TRUSTEE ADEQUATELY ADDRESSES, IF THE TRUSTEE ADDRESS THEM AT ALL.

"As a general matter, security deeds are properly recorded if they adhere to the ***recordation*** requirements in existence at the time of recordation. *In re Simpson*, 544 B.R. 913, 918 (Bakr. N.D. GA. 2016)." *Lubin v. TIAA, FSB* (*In re Coles)*, Adversary Proceeding No. 19-5208-PMB, Case Number 17-72218-PMB (N.D. Ga. 2020)(emphasis added). In the case of *In re Coles*, the lender's Motion to Dismiss the Chapter 7 Trustee's Adversary Complaint seeking to "unrecord" the lender's Security Deed was granted.[3]

"***In the absence of fraud***, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive

[3] The Scrivener's Affidavit relied on by the Court in *In re Coles* recorded at Deed Book 21433, Page 445, DeKalb County, Georgia Records contains a notary signature that is illegible and thus under the Trustee's novel regime does not exist in Bankruptcy Court. However, the Bankruptcy Court relied on it. In addition, the underlying Deed to Secure Debt recorded at Deed Book 19353, Page 602, DeKalb County, Georgia Records also contains an illegible notary signature as shown at Deed Book 19353, Page 615, DeKalb County, Georgia Records. The Closing Attorney's Affidavit recorded with the Deed to Secure Debt at Deed Book 19353, Page 620, DeKalb County, Georgia Records further contains an illegible notary signature by yet a second notary. A later Assignment of the Deed to Secure Debt in the case recorded at Deed Book 31015, Page 3, DeKalb County, Georgia Records also contains an illegible notary signature by still yet another notary.

notice to subsequent bona fide purchasers." O.C.G.A. § 44-14-33 (2006)(emphasis supplied).

The Trustee argues that the Trustee's position is in line with hundreds of years of tradition and jurisprudence; but the Trustee does not cite a single case from any of those hundreds of years that says the Trustee is correct.

The Trustee is correct that "…the phrase '*only and exactly*' appears nowhere else in the Georgia Code…" Trustee's Response Brief, Page 3. Both parties are in agreement that the phrase is not defined in the Code. In addition, the only Georgia cases using the either one of the phrases "only and exactly' or "exactly and only" are *In re Krieg*[4] and *In re Simpson* and those cases only use the phrase in the context of a quotation of the statute. So, there are no cases instructing as to the meaning of the phrase.

The Trustee argues that the impact of the Trustee's novel regime will be minimal at worst because almost all deed to secure debt will be saved by the Closing Attorney's Affidavit (as is now the case under *In re Kim*[5]). On the other hand, Defendant states that the Closing Attorney's Affidavit will not be expected to solve the problem as the Closing Attorney's Affidavit is just as likely to also contain an illegible notary signature.

[4] *Gordon v. Wells Fargo Bank, N.A. (In re Krieg)*, 951 F.3d 1299 (11th Cir. 2020). The Deed to Secure Debt that formed the basis of *In re Krieg* recorded at Deed Book 12730, Page 350, Henry County, Georgia Records contains an illegible notary signature. The Closing Attorney's Affidavit recorded with the Deed to Secure Debt at Deed Book 12730, Page 359, Henry County, Georgia Records also contains an illegible notary signature.

[5] *Terrace Mortgage Company, LLC v. Gordon*, (*In re Kim)*, 571 F.3d 1342 (11th Cir. 2009)(bankruptcy court's "unrecording" of deed to secure debt reversed). The Notary signature on the Deed to Secure Debt recorded at Deed Book 17410, Page 315, DeKalb County, Georgia Records is completely illegible. Likewise, the Notary signature on the Closing Attorney Affidavit that saved the Deed To Secure Debt recorded at Deed Book 17410, Page 319, DeKalb County, Georgia Records is also completely illegible.

For example, in the case of *In re Perry*, 565 B.R. 442 (Bankr. M.D. Ga. 2017), the deed to secure debt where the notary acknowledged the deed instead of attesting it was upheld on the basis of the Closing Attorney's Affidavit. However, the Closing Attorney's Affidavit recorded with the deed to secure debt at Deed Book 1389, Page 50, Harris County, Georgia Records which was used to uphold the deed to secure debt has a notary signature that may or may not be legible (and without the notary seal would almost certainly be considered illegible). The debate that could be had over whether that notary's signature on that Closing Attorney's Affidavit is legible or illegible serves as a mere preview of the multitudinous disputes that will occur under the Trustee's novel (and as of yet standardless) regime.

There is simply a multitude of problems with the Trustee's novel regime, none of which are adequately addressed by the Trustee, if they are even addressed at all.

## V. THE DEED IN *IN RE SIMPSON* HAS AN ILLEGIBLE NOTARY SIGNATURE BUT BOTH THE COURT AND THIS TRUSTEE REFER TO THAT DEED AS "SIGNED."

The Trustee relies on *In Re Simpson* even though the deed to secure debt in *In Re Simpson* that the Court found to be "signed" would not be "signed" under the Trustee's novel regime. This points to the absurdity of the Trustee's position.

The Trustee is positing a completely novel legal theory that even the Court in *In Re Simpson* did not mention, much less adhere to. Indeed, the Court in *In Re Simpson* quotes the "only and exactly" language from the Notary Statute and then writes that the notary ***SIGNED*** the deed (even though the notary's signature is completely illegible).

Indeed, in relation to *In Re Simpson*, the Trustee allows the mask to slip and admits that "[t]he notary's name and signature *did* appear on the document…" (emphasis as in original). Trustee's Response Brief, Page 4.

The Trustee makes a similar admission later in the Trustee's Response Brief regarding the *Leeds* case. "In the *Leeds* case, the face of the document (this signature page) was statutorily sufficient." Trustee's Response Brief, Page 10.

Accordingly, that which the Trustee argues is "unsigned" here is considered "signed" in every other context including the deed to secure debt in *In re Simpson*.

## VI. BOTH THE STATUTE AND THE TRUSTEE'S RESPONSE BRIEF OMIT THE WORD "LEGIBLE" EVEN THOUGH LEGIBILITY IS THE *SINE QUA NON* OF THE TRUSTEE'S PROPOSED STANDARDS FOR HOW NOTARY SIGNATURES ARE TO BE JUDGED.

The entirety of the Trustee's argument here is based on the word "legible." However, the Notary Statute does not require a notary's signature to be legible. Indeed, the Notary Statute does not contain the word "legible."

If the General Assembly had meant to require the signature to be "legible," the General Assembly could have said so. The Trustee clearly understands this concept. "But, if that is what the General Assembly intended, it would have written the statute that way." Trustee's Response Brief, Page 8.

In a similar vein to the absence of the word "legible" in the Notary Statute, the Trustee's Response Brief is completely devoid of any treatment of the word "legible" or any standards for legibility at all (much less uniform ones).

Thus, the Trustee is not relying on the plain meaning of the words that appear in the Notary Statute. Rather, the Trustee is attempting to rely on a word that does not appear in the Notary Statute but one that the Trustee wishes appeared in the Notary Statute.

## VII. THE TRUSTEE'S ARGUMENT HERE IS COMPLETELY DIFFERENT THAN THE TRUSTEE'S ARGUMENT IN *GORDON*.

In the *Gordon* line of cases, the deeds were not constructive notice because certain required signatures were clearly and obviously not present on the face of the deeds. As such, the Courts have ruled that the complete absence of a signature is a patent defect that is easy for anyone to detect (which was Justice Nahmias' point). Here, in an attempt to make this case be like *Gordon*, the Trustee tries to make signatures which are very much present disappear. To make that leap, the Trustee argues that an illegible signature is an absent signature. The Trustee cites no case law in support of this argument. The Trustee's argument is sophistry and nonsense in that the signatures here are not absent as in *Gordon*. Here the signatures are patently evident for All the World to see.

Further, in the *Gordon* series of cases, everyone in the World could see that there was an error in the execution of the deed to secure debt because signatures were patently missing. The issue was to determine what were the consequences of the obvious and patent errors. Here, no one other than this one Trustee is arguing that this notary did anything wrong. The notary certainly does not believe that the notary did anything wrong. The notaries in the other cases cited herein where the deeds to secure debt were upheld certainly do not believe that they did anything wrong. And apparently neither did the reviewing courts. Accordingly this case and the *Gordon* line of cases are completely different despite the Trustee's effort to achieve the same result.

In addition, some standard of what degree of illegibility a signature must evidence before it can be said to disappear is one that simply must be established before

the Trustee's novel regime could possibly be put in place. Again, the Trustee is completely silent on this point.

The fundamental question of this case is whether this page has the official signature of the notary on it or is the deed blank where the notary was supposed to sign.

Notary Public, County
State of Georgia

With regard to this signature page, the Trustee writes "there is no official witness signature" on it. Trustee's Response Brief, Page 10. In the current iteration of the Marx Brothers' famous line, the Trustee asks, "Are you going to believe me, or your own eyes?"

On the other hand, Defendant (as does the rest of All of the World) clearly sees an official notary signature present.

## VIII. ***IN RE BROWNLEE* IS CONTROLLING AND BREAKS AGAINST THE TRUSTEE.**

Like the Trustee's argument in *Kelley v. Goforth (In re Brownlee*), 606 B.R. 508*; 2019 Bankr. LEXIS 2867 **, 2019 WL 4390824 (Bankr. S.D. Ga. 2019), the Trustee's argument here is not a close question. If the notary's signature is a defect at all (which it is not), it is at worst a latent defect. "…[H]owever, such attestation ***can hardly be said to be 'obviously defective on its face***." (emphasis supplied). The Court in *In re Brownlee* decided that the defect was a latent one and it was not even close. *Id.*, 606 B. R. at 510.

"For the reasons stated below, the Court concludes that, because the attestation of the Deed resulted in a latent defect rather than a patent defect, the Deed was capable of providing the required constructive notice to subsequent bona fide purchasers. In light of this, Defendants' motion is granted, and Trustee's motion is denied." *In re Brownlee*, 606 B. R. at 510.

The Goforth Deed to Secure Debt that was at issue in *In re Brownlee* is recorded at Deed Book 1858, Page 83, Tift County, Georgia Records. While the middle initial and the last name of the Notary are legible, the first name of the notary is not completely legible.[6] Accordingly, this signature points to the endless fights of "how legible is legible?" that will ensue should the Trustee's novel regime be adopted. Additionally, it is important to note that the Goforth Deed to Secure Debt does not have a Closing Attorney's Affidavit so even in the limited number of deeds in cases cited by the parties, we see yet another deed that would not be cured by a Closing Attorney's Affidavit.

Just like in *In re Brownlee*, the Defendant's motion should be granted, and the Trustee's motion should be denied.

## **CONCLUSION**

The Court cannot apply O.C.G.A. Section 45-17-8.1 strictly and harshly in the face of catastrophic and far-ranging destructive consequences based on a word that does not even appear in the Notary Statute, to wit – "legible."

---

[6] Is it "Tessa" or "Teresa?" And how would one know for sure without the Notary Seal? This question supports Defendant's argument that the signature and the Notary Seal should be read *in pari materia*. Also again, we are forced to ask, "What does it say on the Notary Commission?" Thus, requiring us to leave the deed to secure debt and go search the notary records.

Indeed, the Trustee's entire argument to "unrecord" massive numbers of deeds and deeds to secure debt from the Georgia Deed Records is completely based on "disappearing" signatures that clearly and obviously appear on a deed to secure debt and making words like "legible" that do not appear in a statute to appear.

The suspension of disbelief required of the Trustee's position is evident from two sentences. "The point is that he might as well have forgotten to sign his name or stamp his seal. He might as well have left his signature line blank." Trustee's Response Brief, Page 17. And thusly, the Trustee is trying to drag the State of Georgia through the looking glass into an *Alice in Wonderland* where words that are printed are "signed," where signatures are not "signed" and indeed do not even exist despite the fact that they appear to any rational observer to be clearly and obviously signed on the page. The Trustee's new world is one where the word "legible" appears in a statute where it does not appear and where the ramifications of a supposed error in a deed to secure debt can be cured by a second document where the same "error" is committed by a second person. However, the consequences of what the Trustee asks the Court to do could not be more serious, even catastrophic.

The Trustee simply does not care what the purpose is behind the statute that the Trustee purports to champion. The Trustee does not care that all of the reasons for requiring the notary's signature are met in this deed to secure debt. The Trustee simply does not care that he is asking this Court to destroy the entire real estate and real estate mortgage industries. The Trustee simply does not care that he is asking this Court to declare that the deed to Justice Nahmias' own house and many of the Judges in this Circuit were never recorded.

"The fact that there are notary signatures or scrawls on many deeds or on many security deeds is completely irrelevant to the legal issues of whether a statute is being complied with." Trustee's Response Brief, Page 18. This Trustee simply does not care.

The Trustee praises the goal of "a desire to keep Georgia's real estate recording books clean of unnecessary or unwanted instruments;" (analyzing *Detention Mgmt., LLC v. UMB Bank, NA (In re Mun. Corr., LLC*), 501 B.R. 119 (Bankr. N.D. Ga. 2013), but in fact, the Trustee is asking this Court to declare that a host of documents that actually appear in the real estate recording books, and probably even a majority, are not recorded.

The Court cannot apply O.C.G.A. Section 45-17-8.1 strictly, harshly and without any consideration to the consequences of "unrecording" a massive number of deeds in the real world. While the Trustee does not care, the real people and businesses, not to mention the Closing Attorneys (including some of the most respected, renowned and esteemed attorneys in the field), do care because they will actually suffer the consequences of the Trustee's novel regime.

The Trustee's motion for summary judgment must be denied and Defendant's motion for summary judgment must be granted.

Respectfully submitted this 2nd day of December, 2024.

THE GILROY FIRM

By:/s/ Monica Gilroy .
Monica Gilroy
Ga. Bar 427520

The Gilroy Firm
1145 Hightower Trail
Atlanta, Georgia 30350
(678) 280-1922 (Telephone)
Monica.Gilroy@gilroyfirm.com

ALDRIDGE, PITE, LLP

/s/ T. Matthew Mashburn
T. Matthew Mashburn
Ga. Bar 475380

Aldridge, Pite, LLP
Suite 700
3525 Piedmont Road NE
Atlanta, Georgia 30305
678 640 8947
mmashburn@aldridgepite.com

## CERTIFICATE OF SERVICE

This is to certify that I, Monica Gilroy, am over the age of 18 and that I have this day served a true and correct copy of the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** by first class United States Postal Service mail on the following persons or entities at the addresses stated:

Michael J. Bargar, Chapter 7 Trustee
Rountree Leitman Klein & Geer LLC
Century Plaza2987 Clairmont Road, Suite 350
Atlanta, GA 30329
 mbargar@rlkglaw.com

William D. Matthews
Rountree Leitman Klein & Geer LLC
Century Plaza2987 Clairmont Road, Suite 350
Atlanta, GA 30329
wmatthews@rlkglaw.com

David J. Maffett
1630 Rivershyre Parkway
Lawrenceville, GA  30043

Respectfully submitted this 2nd day of December, 2024.

THE GILROY FIRM
Attorney for Defendant

By:/s/ Monica Gilroy
Monica Gilroy
Georgia Bar Number 427520

The Gilroy Firm
1145 Hightower Trail
Atlanta, Georgia 30350